UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MOUSTAPHA MAGASSOUBA,

                                  Plaintiff,

            -against-

THE CITY OF NEW YORK, ET AL.,

                                  Defendants.

No. 23-CV-3686 (KMK)

OPINION & ORDER

Appearances:

Moustapha Magassouba
New York, NY
*Pro Se Plaintiff*

Zachary Kalmbach, Esq.
New York City Law Department
New York, NY
*Counsel for Defendants The City of New York and New York City Police Department*

KENNETH M. KARAS, United States District Judge:

    Plaintiff Moustapha Magassouba ("Plaintiff"), proceeding pro se, brings this Action,

against The City of New York (the "City") and the New York City Police Department ("NYPD,"

together with the City, the "City Defendants"), alleging various federal and state law claims.  (*See*

*generally* Amended Compl. ("AC") (Dkt. No. 52).)  Before the Court is the City Defendants'

Motion for Judgment on the Pleadings (the "Motion"), requesting that the AC be dismissed in its

entirety as against them.  (*See* Not. of Mot. (Dkt. No. 43).)  For the following reasons, the City

Defendants' Motion is granted.[1]

---

    [1] The Court notes that Defendants Janet DiFiore and Adrienne M. Chapoulie,
(collectively, the "County Defendants"), have separately moved to dismiss Plaintiff's claims
against them.  (*See* Dkt. No. 30.)  The Court addresses the County Defendants' motion in a
separate opinion.

I.  Background

A.  Factual Background

The following facts are drawn from Plaintiff's AC, all of which are assumed to be true for the purpose of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

On March 19, 1996, Plaintiff pleaded guilty to forgery in the City Court of White Plains. (*See* AC at 4.)  As a result, Plaintiff was fined $800, which he alleges that he paid.  (*See* AC at 6, 8.)  On September 11, 1996, a City Judge in the City Court of White Plains issued a bench warrant for Plaintiff's arrest for failure to pay the fine.  (*See* Declaration of Jesse N. Zilinski ("Zilinski Decl.") Ex. A (Dkt. No. 45-1).)[2]  Plaintiff alleges that on August 1, 2000, he was arrested by the NYPD.  (*See* AC at 4.)  On August 7, 2000, Plaintiff pled guilty and was resentenced to time served.  (*See id.*)  Thereafter, Plaintiff was extradited to Allegheny County, Pennsylvania on November 3, 2000, on various other charges.  (*See* Zilinski Decl. Ex. B at 2 (Dkt. No. 45-2).)  Those charges were dismissed on July 17, 2002, and Plaintiff was released from custody on August 1, 2002.  (*See id.*)

On July 30, 2003, Plaintiff filed a lawsuit against, among others, the City Defendants in the New York Supreme Court, Bronx County.  (*See id.*)  On August 8, 2008, Plaintiff accepted a $4200 settlement from the City Defendants.  (*See id.*)  On September 24, 2008, Plaintiff signed a General Release relieving the City of liability "[i]n particular for injuries sustained on August 1, 2000."  (*See* Zilinski Decl. Ex. D (Dkt. No. 45-4).)

---

[2]  The City Court of White Plains Bench Warrant is for "Camara Sidy," which is an alias for Plaintiff.  Various documents attached to Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss brought by the County Defendants indicate as much.  (*See e.g.*, Dkt. No. 34 Ex. C.)

B.  Procedural History

Plaintiff filed his Complaint on May 12, 2023.  (*See* Compl.)  After the Court set a

briefing schedule, on October 27, 2023, the City Defendants filed the instant Motion.  (*See* Not. of

Mot.; Mem. of Law in Supp. of City Defendants' Mot. for J. on the Pleadings ("Defs.' Mem.")

(Dkt. No. 44); Zilinski Decl. (Dkt. No. 45).)  On November 30, 2023, Plaintiff filed his

Opposition.  (*See* Pl.'s Mem. of Law in Opp. ("Pl.'s Opp.") (Dkt. No. 51).)  On the same day,

Plaintiff filed his AC.  (*See* Dkt. No. 53.)  On December 11, 2023, the City Defendants consented

to the filing of the AC.  (*See* Dkt. No. 57.)  Consequently, the Court gave the City Defendants two

weeks from the date that they were served with the AC to file their Reply, which would also

address Plaintiff's amended claims, if any.  (*See* Dkt. No. 60.)  The Court also allowed Plaintiff to

submit a sur-Reply two weeks thereafter.  (*See id.*)  On February 6, 2024, the City Defendants

filed their Reply.  (*See* Reply Mem. of Law in Supp. of City Defendants' Mot. for J. on the

Pleadings ("Defs.' Reply Mem.") (Dkt. No. 88).)  Plaintiff filed his sur-Reply on March 11, 2024.

(*See* Pl.'s Mem. of Law in Opp. (Dkt. No. 98).)

## II.  Discussion

A.  Standard of Review

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical

to that for granting a Rule 12(b)(6) motion for failure to state a claim."  *Lively v. WAFRA Inv.*

*Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting *Lynch v. City of New York*, 952 F.3d

67, 75 (2d Cir. 2020)); *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir.

2011) ("In deciding a Rule 12(c) motion, we employ the same standard applicable to dismiss

pursuant to Rule 12(b)(6)." (alterations adopted) (internal quotation marks and citation omitted)).

3

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570. However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

When ruling on both a Rule 12(c) motion and a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegation contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw all reasonable inferences in the plaintiff's favor," *Div. 1181*, 9 F.4th at 94 (citation omitted); *see also Cho v. Blackberry Ltd.*, 991 F.3d 155, 162 (2d Cir. 2021) ("The standard of review for a Rule 12(c) motion is the same as for a Rule 12(b)(6) motion: we must 'accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiffs' favor.'" (alteration adopted) (quoting *Bryan v. Credit Control, LLC*, 954 F.3d 576, 580 (2d Cir. 2020))). Additionally, when ruling on both types of motions, district courts are directed to confine their consideration to "the complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (quotation marks omitted); *see also Lively*, 6 F.4th at 305 ("[C]ourts may on a Rule 12(c) motion—just as on a Rule 12(b)(6) motion—consider extrinsic material that the complaint incorporates by reference, that is integral to the complaint, or of which courts can take judicial notice." (alteration adopted) (internal quotation marks and citation omitted)). But when a plaintiff proceeds pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

Moreover, where, as here, a Plaintiff proceeds pro se, the Court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation

omitted).  Notwithstanding a standard of review comparatively more lenient and favorable to pro

se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules

of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)

(internal quotation marks and citation omitted); *see also Caidor v. Onondaga County*, 517 F.3d

601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding

procedural rules and to comply with them." (italics omitted) (internal quotation marks and citation

omitted)).

### B.  Analysis

Construing Plaintiff's AC liberally and interpreting it to raise the strongest arguments that

it suggests, the Court determines that Plaintiff brings a false arrest claim against the NYPD and a

municipal liability claim against the City pursuant to *Monell v. Department of Social Services*,

436 U.S. 658 (1978). (*See* AC at 12–13, 15–16.)  The Court concludes that Plaintiff's claims must

be dismissed because the NYPD is not a suable entity, and because Plaintiff fails to adequately

state a *Monell* claim against the City.[3]

### 1.  The NYPD

Plaintiff alleges a false arrest claim against the NYPD.  (*See* AC at 15–16.)  However,

such a claim against the NYPD is improper because "the NYPD is a non-suable entity."

*Iosilevich v. City of New York*, No. 22-CV-3714, 2023 WL 3231597, at *2 (E.D.N.Y. May 3,

2023); *see also Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (explaining that

---

[3] As a threshold matter, the City Defendants contend that Plaintiff's claims are barred by a
general release Plaintiff signed in 2008 in connection with a settlement between Plaintiff and the
City.  (*See* Defs.' Mem. at 5–7.)  Even assuming arguendo, without deciding, that Plaintiff's
claims are not barred by the general release, Plaintiff's claims against the City Defendants still
fail for the reasons stated herein.

the NYPD is a "non-suable agency of the City").  The New York City Charter provides that "all actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the [C]ity of New York and not in that of any agency, except where otherwise provided by law."  N.Y. City Charter Ch. 17, § 396.  Accordingly, Plaintiff's claim against the NYPD, which is an agency of the City, must be dismissed.  *See Berfet v. N.Y.P.D.*, No. 21-CV-160, 2021 WL 930351, at *2 (S.D.N.Y. Mar. 9, 2021) (dismissing claims against the NYPD because "as an agency of the City of New York, the NYPD cannot be sued"); *Mehmeti v. Brown*, No. 20-CV-1493, 2020 WL 4350248, at *2 (E.D.N.Y. July 29, 2020) (dismissing claims against the NYPD "[b]ecause the NYPD is an agency of the City of New York" and therefore, "it is not amenable to suit").

### 2.  The City

#### a.  Federal Law

Plaintiff also seemingly asserts a failure to train and supervise claim against the City.  (*See* 12–13.)  "To state a claim under [Section] 1983, the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right."  *Sykes*, 723 F.3d at 405–06.  However, "Congress did not intend municipalities to be held liable [under Section 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell*, 436 U.S. at 691.  Thus, "to prevail on a claim against a municipality under [S]ection 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008).

7

This multi-factor test, and particularly its fifth element, reflects the notion that "a municipality may not be held liable under [Section] 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Seward v. Antonini*, No. 20-CV-9251, 2023 WL 6387180, at *23 (S.D.N.Y. Sept. 29, 2023) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right." (quoting *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008))). In other words, a municipality may not be liable under Section 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted); *see also Clarke v. Antonini*, No. 21-CV-1877, 2024 WL 1347578, at *4 (S.D.N.Y. Mar. 29, 2024) ("[A] municipal entity may only be held liable where the entity itself commits a wrong." (quoting *Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008))). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights."); *Bronx Freedom Fund v. City of New York*, No. 21-CV-10614, 2024 WL 1329172, at *8 (S.D.N.Y. Mar. 28, 2024) ("[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." (internal quotation marks and citation omitted)).

"In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" *Kiss v. Torres*, No. 21-CV-10391, 2024 WL 1210941, at *20 (S.D.N.Y. Mar. 19, 2024) (quoting *Davis v. City of New York*, 228 F. Supp. 2d

327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003) (summary order)).  Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]."  *Newton*, 566 F. Supp. 2d at 271; *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Santana v. City of New York*, No. 15-CV-6715, 2018 WL 1633563, at *10 (S.D.N.Y. Mar. 29, 2018) ("[A] 'single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.'" (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998))); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Dumel v. Westchester County.*, No. 19-CV-2161, 2021 WL 738365, at *5 (S.D.N.Y. Feb. 25, 2021) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010)); *accord Atadzhanov v. City of New York*, No. 21-CV-5098, 2022 WL 4331304, at *11 (S.D.N.Y.

Sept. 19, 2022).  Moreover, as noted, a plaintiff must also establish a causal link between the

municipality's policy, custom, or practice and the alleged constitutional injury.  *See Tuttle*, 471

U.S. at 824 n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly

sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a

constitutional violation.  There must at least be an affirmative link between[, for example,] the

training inadequacies alleged, and the particular constitutional violation at issue." (emphasis

omitted)); *Roe*, 542 F.3d at 37 (holding that "a plaintiff must demonstrate that, through its

deliberate conduct, the municipality was the 'moving force' behind the alleged injury" (quoting

*Brown*, 520 U.S. at 404)); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a

showing of a causal link between an official policy or custom and the plaintiff['s] injury, *Monell*

prohibits a finding of liability against the [c]ity."); *Johnson v. City of New York*, No. 06-CV-9426,

2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence

of a municipal policy or custom, "a plaintiff must establish a causal connection—an affirmative

link—between the policy and the deprivation of his constitutional rights" (quotation marks

omitted)).

 Here, Plaintiff alleges that the City "failed to train and supervise its employees to prevent

[the] kind of [c]onstitutional rights violation" Plaintiff suffered.  (AC at 13.)  Such an assertion,

without more, is insufficient to establish the fifth element of a *Monell* claim.

 A failure to train constitutes a policy or custom that is actionable under Section 1983 only

where "in light of the duties assigned to specific officers or employees[,] the need for more or

different training is so obvious, and the inadequacy so likely to result in the violation of

constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately

indifferent to the need."  *City of Canton*, 489 U.S. at 390.  The Second Circuit has held that a

finding of deliberate indifference requires: (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (alteration in original) (quoting *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Similarly, "[t]o establish *Monell* liability premised on a failure to supervise, a plaintiff must plead that (1) there was a pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity, and (2) the municipality consistently failed to investigate those allegations." *Lopes v. Westchester County*, No. 18-CV-8205, 2020 WL 1445729, at *5 (S.D.N.Y. Mar. 25, 2020). Alternatively, "a plaintiff may plead (1) that there was a pattern of actual similar constitutional violations and (2) the municipality consistently failed to discipline those involved." *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *21 (S.D.N.Y. Mar. 26, 2015) (emphasis omitted). To establish deliberate indifference for a failure to supervise and/or discipline claim, the plaintiff must show that "the need for more or better supervision to protect against constitutional violations was obvious," which may be established "through proof of repeated complaints of civil rights violations . . . if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Buari v. City of New York*, 530 F. Supp. 3d 356, 400 (S.D.N.Y. 2021) (quoting *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)).

11

As to training, Plaintiff's claim fails because he has not alleged any specific training deficiency.  *See Taranto v. Putnam County*, No. 21-CV-2455, 2023 WL 6318280, at *19 (S.D.N.Y. Sept. 28, 2023) (dismissing the plaintiff's *Monell* claim because, insofar as it sounded in a failure-to-train theory, "they ha[d] not alleged a specific training deficiency"); *see also Dawson v. Westchester County*, No. 18-CV-7790, 2019 WL 3408899, at *4 (S.D.N.Y. July 29, 2019) (same); *Tieman*, 2015 WL 1379652, at *22 ("[A] plaintiff must plausibly allege a specific deficiency in the municipality's training."); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 539 (S.D.N.Y. 2012) (dismissing *Monell* claim where the plaintiff "merely alleged that the [t]own failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program").  Moreover, to the extent Plaintiff's *Monell* claim is based on a failure to supervise, the Court points out that Plaintiff has not alleged that there was a "pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity."  *Lopes*, 2020 WL 1445729, at *5; *see also Rivera v. Westchester County*, No. 18-CV-8354, 2019 WL 3958425, at *5 (S.D.N.Y. Aug. 22, 2019) (finding that the plaintiff's claim that Aramark failed to train and supervise its staff was a "boilerplate assertion" and that the plaintiff had "cited no specific deficiency in Aramark's training or supervision protocols" (alteration adopted) (internal quotation marks and citation omitted));*Quick v. Westchester County*, No. 18-CV-243, 2019 WL 1083784, at *5 (S.D.N.Y. Mar. 7, 2019) (dismissing *Monell* claim where the plaintiff alleged a failure to supervise kitchen workers who did not wear hairnets, among other shortcomings, because the complaint was "devoid of any detailed factual allegations" about Westchester County Department of Correction's lack of training or supervisory program or its deliberate indifference to food preparation).

Accordingly, because Plaintiff has not adequately alleged a failure to train and/or supervise, his municipal liability claim is dismissed.  *See Jackson v. Westchester County*, No. 18-CV-7207, 2019 WL 3338020, at *4 (S.D.N.Y. July 25, 2019) (dismissing a *Monell* claim where the plaintiff failed to "allege the existence of any policy, any actions taken or decisions made by any . . . policymaking officials, any systemic failures to train or supervise, or any practices so widespread that they practically have the force of law" and failed to "provide any factual details regarding . . . other [purported] lawsuits and grievances" on similar issues)*; McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7 (S.D.N.Y. Dec. 28, 2018) (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation); *5 Borough Pawn, LLC v. City of New York*, 640 F. Supp. 2d 268, 300 (S.D.N.Y. 2009) (dismissing *Monell* claim where the "plaintiffs fail[ed] to allege any facts showing that there is a [municipal] policy—unspoken or otherwise—that violates the Federal Constitution").

### b.  State Law

Finally, to the extent Plaintiff raises a state law claim against the City, in light of the Court's dismissal of Plaintiff's federal claim, the Court declines to exercise supplemental jurisdiction over any state law claim.  *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction . . . .").  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d

705, 727 (2d Cir. 2013) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)); *see also One Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) (summary order) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims . . . ."); *Young v. Suffolk County*, 922 F. Supp. 2d 368, 397–98 (E.D.N.Y. 2013) (declining to exercise supplemental jurisdiction over state-law counterclaim after dismissing all federal claims).

### III.  Conclusion

For the foregoing reasons, the City Defendants' Motion is granted.  The dismissal is without prejudice because this is the first adjudication on the merits of Plaintiff's claims against the City Defendants.  *See Terry v. Incorporated Village of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining that "district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings" unless "amendment would be futile").

Should Plaintiff choose to file an amended complaint to re-plead the dismissed claims, he must do so within thirty days of this Opinion, addressing the deficiencies identified herein.  The amended complaint will replace, not supplement, the Complaint currently before the Court.  It therefore must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider, including the identification of individuals and the nature of their involvement.  If Plaintiff fails to abide by the thirty-day deadline, the claims could be dismissed with prejudice.

The Clerk of Court is respectfully requested to terminate the pending Motion, (Dkt. No. 43), and to mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

Dated:   June 12, 2024
   White Plains, New York

                   KENNETH M. KARAS
                 United States District Judge