UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MOUSTAPHA MAGASSOUBA,

                Plaintiff,

-against-

THE CITY OF NEW YORK, ET AL.,

                Defendants.

No. 23-CV-3686 (KMK)

OPINION & ORDER

---

Appearances:

Moustapha Magassouba
New York, NY
*Pro Se Plaintiff*

Irma Wheatfield Cosgriff, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants Janet DiFiore and Adrienne M. Chapoulie*

MaryBeth Catherine Allen-Knecht, Esq.
NYS Unified Court System
Goshen, NY
*Counsel for Defendants Janet DiFiore and Adrienne M. Chapoulie*

KENNETH M. KARAS, United States District Judge:

    Plaintiff Moustapha Magassouba ("Plaintiff"), proceeding pro se, brings this Action, alleging claims of malicious prosecution and negligent supervision against former District Attorney Janet DiFiore ("DiFiore"), and a claim of malicious prosecution against former Assistant District Attorney Adrienne M. Chapoulie ("Chapoulie," together with DiFiore, the "County Defendants"). (*See generally* Amended Compl. ("AC") (Dkt. No. 52).) Before the Court is the

County Defendants' Motion to Dismiss (the "Motion") Plaintiff's AC in its entirety.  (*See* Not. of Mot. (Dkt. No. 30).)  For the following reasons, the County Defendants' Motion is granted.[1]

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's AC, all of which are assumed to be true for the purpose of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Plaintiff's claims against the County Defendants arise from his conviction on March 19, 1996, for forgery, which resulted in an $800 fine; his re-sentencing on August 7, 2000 for failure to pay the fine, which resulted in a sentence of time served; and a subsequent denial of Plaintiff's motion to vacate the same conviction.  (*See* AC at 4, 8–9.)

Plaintiff claims that DiFiore was deliberately indifferent and grossly negligent because she intentionally refused to instruct and supervise her employees, allowing her assistants to bring a false claim against Plaintiff, namely that Plaintiff did not pay an $800 fine that was imposed on him by the "City Court" on March 19, 1996.  (*Id.* at 13–14.)  Plaintiff asserts that he did pay the $800 fine to the Clerk of Court on March 19, 1996.  (*Id.* at 14.)  Plaintiff claims that DiFiore is responsible for the malicious prosecution conducted against him and for the subsequent injuries to Plaintiff.  (*Id.*)  In addition, Plaintiff asserts that when DiFiore subsequently became the Chief Judge for the "State Appeals Court of New York," her judgments regarding Plaintiff's cases were prejudiced and unconstitutionally abusive.  (*Id.*)

---

[1] The Court notes that Defendants The City of New York and New York City Police Department, (collectively, the "City Defendants"), have separately moved for judgment on the pleadings.  (*See* Dkt. No. 43.)   The Court addresses the City Defendants' motion in a separate opinion.

With regard to Chapoulie, Plaintiff alleges that she was deliberately indifferent, grossly negligently, and intentionally reckless. (*Id.*) Plaintiff asserts that even though he informed Chapoulie that he paid his $800 dollar fine, Chapoulie refused to verify such information and, instead, misled the Courts by defaming the Plaintiff's character and tainting his record. (*Id.*) This led to Plaintiff having to serve a long prison sentence, and him losing "lifetime opportunities." (*Id.*) Additionally, Plaintiff claims that he had a malpractice action against a law firm, which was dismissed as a result of the delay caused by Chapoulie, as well as the false and misleading information she provided to various courts. (*Id.* at 14–15.)

B. Procedural History

Plaintiff filed his Complaint on May 12, 2023. (*See* Compl.) Following an initial conference with the Court, on September 5, 2023, the County Defendants filed the instant Motion. (*See* Not. of Mot.; Mem. of Law in Supp. of County Defendants' Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 31).) On September 19, 2023, Plaintiff filed his Opposition. (*See* Opp. and Obj. to County Defendants' Mot. to Dismiss ("Pl.'s Opp.") (Dkt. No. 34).) On October 26, 2023, the County Defendants filed their Reply. (*See* Reply Mem. of Law in Supp. of County Defendants' Mot. to Dismiss ("Defs.' Reply Mem.") (Dkt. No. 42).)

On November 30, 2023, Plaintiff filed the AC and requested an Order from the Court allowing Plaintiff to serve the AC on the Defendants. (*See* Dkt. Nos. 52–53.) After hearing from the Parties, the Court granted Plaintiff's request for leave to file and serve Defendants with the AC. (*See* Memo Endorsement (Dkt. No. 60).) In addition, the Court gave the County Defendants leave to file a supplemental brief with regard to their Motion to Dismiss to address Plaintiff's amended claims, if any. (*Id.*) On January 10, 2024, the County Defendants filed their supplemental briefing. (*See* Letter Reply in Supp. of County Defendants' Mot. to Dismiss

3

("Defs.' Supp. Mem.") (Dkt. No. 66).) Plaintiff submitted his response to the County Defendants' supplemental briefing on January 17, 2024. (*See* Letter in Opp. to County Defendants' Mot. to Dismiss ("Pl.'s Supp. Opp.") (Dkt. No. 67).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570. However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the


complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). But when a plaintiff proceeds pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

Moreover, where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation

5

omitted). Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics omitted) (internal quotation marks and citation omitted)).

B. Analysis

Construing Plaintiff's AC liberally and interpreting it to raise the strongest arguments that it suggests, the Court determines that Plaintiff brings claims of malicious prosecution and negligent supervision against DiFiore and a claim of malicious prosecution against Chapoulie. (*See* AC at 13–15.) The County Defendants seek to dismiss all claims against them, arguing that the Court lacks personal jurisdiction over the County Defendants because Plaintiff failed to properly serve process on them; Plaintiff's claims are time-barred; the AC fails to allege a claim for relief on the merits; Plaintiff has failed to establish personal involvement; and the County Defendants are entitled to absolute immunity. (*See generally* Defs.' Mem.)

Even assuming arguendo, without deciding, that Plaintiff properly served the County Defendants, such that the Court has personal jurisdiction over them, and that Plaintiff's claims are timely, the Court determines that Plaintiff's claims must be dismissed due to: (1) DiFiore's lack of personal involvement in Plaintiff's alleged malicious prosecution; (2) Plaintiff's failure to allege that the employees DiFiore supervised acted outside the scope of their employment; and (3) Chapoulie's entitlement to absolute immunity as to her prosecutorial functions. The Court addresses each of Plaintiff's claims in turn.

### 1.  Malicious Prosecution Claim against DiFiore

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Sterling v. Akinyombo*, No. 20-CV-10804, 2022 WL 2657223, at *4 (S.D.N.Y. July 8, 2022) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), *abrogated on other grounds by Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020)).  Simply being a supervisor is not enough to impute personal involvement onto a defendant; liability exists only where the "defendant, through the official's own individual actions, has violated the Constitution." *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676).

Here, Plaintiff states that "DiFiore is responsible for the [m]alicious [p]rosecution conducted against [him] and for the subsequent injuries to him." (AC at 14.)  However, Plaintiff fails to put forward *any* facts showing that DiFiore was directly involved in, or even aware of, the prosecution against Plaintiff.  (*See generally* AC.)  Rather, Plaintiff seemingly attempts to hold DiFiore liable on a respondeat superior theory for the actions of her employees, (*see* AC at 13–14), which as explained above is insufficient for a Section 1983 claim, *see Tangreti*, 983 F.3d at 618; *see also Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) ("[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority.").  As such, because Plaintiff cannot rely on a theory of supervisory liability and because Plaintiff has failed to plead any facts demonstrating DiFiore's direct involvement in Plaintiff's prosecution, Plaintiff's malicious prosecution claim against DiFiore must be dismissed. *Dowtin v. O'Neil*, 416 F. Supp. 3d 159, 162 (E.D.N.Y. 2017) (dismissing plaintiff's claims against district attorney, where "[p]laintiff ha[d] not pleaded any facts to demonstrate that . . . [the district attorney was] personally involved in any of the violations alleged in the complaint," and instead

7

was "named in the complaint because of the particular position[] that [he] occup[ied] in the city government"); *see also Rodriguez v. City of New York*, 649 F. Supp. 2d 301, 305 (S.D.N.Y. 2009) ("[P]laintiff has failed to allege that [the d]istrict [a]ttorney . . . was personally involved in plaintiff's arrest nor has he included in his pleadings any facts that would give[] rise to an inference of direct involvement. Without allegations of direct involvement, a false arrest claim for damages under Section 1983 [cannot be maintained.]"); *Washington v. Kelly*, No. 03-CV-4638, 2004 WL 830084, at *3 (S.D.N.Y. Apr. 13, 2004) (dismissing malicious prosecution claim against district attorney, where plaintiff failed to allege that district attorney was personally involved in plaintiff's prosecution and instead was relying on a respondeat superior theory of liability).

### 2. Negligent Supervision Claim against DiFiore

"To state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tortfeasor and the defendant were in an employee-employer relationship, (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Idiakheua v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 20-CV-4169, 2022 WL 10604355, at *17 (E.D.N.Y. Oct. 18, 2022) (quoting *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004)). "New York law does not permit a claim for negligent hiring, training, retention[,] or supervision where the defendants act in the scope of their employment." *Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 521–22 (S.D.N.Y. 2015) (collecting cases); *see also D'Angelo v. City of Lockport*, No. 19-CV-221, 2023 WL 6812135, at *9 (W.D.N.Y. July 14, 2023) ("It is well-settled that 'a claim for negligent hiring or supervision can only proceed against an employer for an employee acting outside the scope of her employment.'" (quoting

8

*Newton v. City of New York*, 681 F. Supp. 2d 473, 488, 494–95 (S.D.N.Y. 2010)), *report and recommendation adopted*, 2023 WL 6810274 (W.D.N.Y. Oct. 16, 2023).

Here, Plaintiff does not allege that the unspecified employees DiFiore supervised acted outside the scope of their employment with regard to Plaintiff's prosecution. (*See generally* AC.) In fact, the acts Plaintiff alleges relate to his prosecution, all of which seem to have occurred in the course of their employment as prosecutors. (*See id.*) As such, Plaintiff cannot state a claim for negligent supervision against DiFiore, and therefore, that claim is dismissed. *See Idiakheua*, 2022 WL 10604355, at *17 (dismissing plaintiff's negligent supervision claim because he "ha[d] not plausibly alleged that any of the tortfeasors were acting outside the scope of their employment"); *see also Zanfardino v. City of New York*, 230 F. Supp. 3d 325, 336 (S.D.N.Y. 2017) ("Plaintiff's claim against the City for negligent hiring, training, screening, supervising and/or instructing . . . must fail for the simple reason that he has not alleged a necessary element of such a claim—that either [d]efendant acted outside the scope of his or her employment."); *Jones v. City of New York*, 988 F. Supp. 2d 305, 319 (E.D.N.Y. 2013) (dismissing plaintiff's negligent hiring, training, and supervision claim because he failed to allege that assistant district attorneys were acting outside scope of their employment).

### 3. Malicious Prosecution Claim against Chapoulie

"The Supreme Court has 'stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Buari v. City of New York*, 530 F. Supp. 3d 356, 377 (S.D.N.Y. 2021) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam) (collecting cases)). "Immunity may be asserted as a defense in a 12(b)(6) motion where the facts supporting the defense appear on the face of the complaint." *Jeanty v. Sciortino*, 669 F. Supp. 3d 96, 108 (N.D.N.Y. 2023) (internal quotation marks and citation omitted) (quoting *Buari*, 530 F. Supp. 3d

at 378), *reconsideration denied sub nom. Jeanty v. Bagley*, No. 22-CV-319, 2023 WL 5175832 (N.D.N.Y. Aug. 11, 2023). "The court must draw all reasonable inferences in favor of the plaintiff, including those that defeat the immunity defense." *Id.* (internal quotation marks and citation omitted).

"Absolute immunity protects a prosecutor not only from liability but also from suit." *Ogunkoya v. Monaghan*, 913 F.3d 64, 67 (2d Cir. 2019) (internal quotation marks and citations omitted). "Prosecutors are entitled to absolute immunity from civil suits for damages under § 1983 when functioning as advocates for the state in circumstances intimately associated with the judicial phase of the criminal process." *Burton v. County of Westchester*, No. 21-CV-1475, 2022 WL 2340478, at *3 (S.D.N.Y. June 29, 2022) (alteration adopted) (internal quotation marks and citations omitted); *see also Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) ("Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate." (alteration adopted) (internal quotation marks and citation omitted)). Because "the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions," they are covered by absolute immunity. *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Hill*, 45 F.3d at 661 (noting that absolute immunity covers such acts as "initiating a prosecution and presenting the case" in court proceedings (internal citations omitted)). In keeping with this bedrock principle, "[i]t is well-established in the Second Circuit that claims of malicious prosecution relate to a prosecutor['s] role as an advocate; and, thus, prosecutors are absolutely immune from malicious prosecution claims." *Del Col v. Rice*, No. 11-CV-5138, 2012 WL 6589839, at *5 (E.D.N.Y. Dec. 18, 2012) (alteration and internal quotation marks omitted), *adhered to on reconsideration*, 2013 WL

4052867 (E.D.N.Y. Aug. 12, 2013); *see also Jackson v. Seewald*, No. 11-CV-5826, 2013 WL 149341, at *7 (S.D.N.Y. Jan. 14, 2013) (report and recommendation) (noting that absolute immunity covers "the malicious prosecution claims brought under both federal and state law"). Notably, absolute immunity is "not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy." *Shmueli*, 424 F.3d at 237–38; *see also Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) ("[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused.").

In the instant Action, the conduct Plaintiff complains of revolves entirely around Chapoulie's prosecution of Plaintiff. (*See* AC 14–15.) Specifically, Plaintiff alleges that Defendant Chapoulie "refused to verify" that Plaintiff paid his fine, and therefore, maliciously prosecuted Plaintiff based on false and misleading information. (*See id.*) This type of conduct is "intimately associated with the judicial phase of the criminal process," and thus, covered by absolute immunity. *See Burton*, 2022 WL 2340478, at *3; *see also Giraldo v. Kessler*, 694 F.3d 161, 167 (2d Cir. 2012) (holding that "pursuit of the charges" is a "legal decision[] at the core of the prosecutorial function" for which a prosecutor is absolutely immune); *Shmueli*, 424 F.3d at 237–38 (reaffirming that prosecutors are absolutely immune from malicious prosecution claims because the alleged conduct involves their roles as advocates). Even taking as true Plaintiff's claim that his prosecution was predicated on incorrect information, such a fact does not impact the applicability of absolute immunity in this case. *See Burton*, 2022 WL 2340478, at *4 (noting that even "the deliberate choice to move forward and prosecute an individual for crimes that a prosecutor knew the accused was innocent of committing," is covered by absolute immunity

because "such a decision describes only functions for which a prosecutor is normally accorded absolute immunity" (alteration adopted) (internal quotation marks and citation omitted)); *see also Shmueli*, 424 F.3d at 238 (holding that ADAs were entitled to absolute immunity from allegations that they "maliciously prosecuted [plaintiff] for various crimes, all of which they knew she was innocent of committing" (internal citation omitted)); *see also Harrison v. County of Nassau*, No. 15-CV-2712, 2016 WL 4083381, at *4 (E.D.N.Y. Aug. 1, 2016) (noting absolute immunity applies "even where the prosecutor knowingly prosecutes an innocent person"). Accordingly, the Court concludes that Chapoulie is shielded by absolute immunity, and therefore, Plaintiff's malicious prosecution claim against her must be dismissed.

### III.  Conclusion

For the foregoing reasons, the County Defendants' Motion is granted. The dismissal is without prejudice because this is the first adjudication on the merits of Plaintiff's claims against the County Defendants. *See Terry v. Incorporated Village of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining that "district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings" unless "amendment would be futile").

Should Plaintiff choose to file an amended complaint to re-plead the dismissed claims, he must do so within thirty days of this Opinion, addressing the deficiencies identified herein. The amended complaint will replace, not supplement, the Complaint currently before the Court. It therefore must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider, including the identification of individuals and the nature of their involvement. If Plaintiff fails to abide by the thirty-day deadline, the claims could be dismissed with prejudice.

The Clerk of Court is respectfully requested to terminate the pending Motion, (Dkt. No. 30), and to mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

Dated: June 12, 2024
        White Plains, New York

                                               KENNETH M. KARAS
                                         United States District Judge